UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

JORGE GOMEZ,

                Defendant.

**ORDER**

15 Cr. 348 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        On April 29, 2021, Defendant Jorge Gomez submitted a second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Dkt. No. 240)  For the reasons stated below, his motion will be denied.

        Gomez pled guilty to conspiring to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Plea Tr. (Dkt. No. 106))  On April 14, 2017, this Court sentenced him to 155 months' imprisonment. (Sentencing Tr. (Dkt. No. 167) at 17)  According to the Bureau of Prisons ("BOP") website, Gomez is currently being held at a prison camp located at FCI-Allenwood Medium, with a projected release date of October 7, 2026.

        In his first compassionate release motion, submitted on July 6, 2020, Gomez argued that that his medical conditions – including "salmonella entercolitis . . . proctitis, cryptitis anal, and prostatitis" – made him especially vulnerable to the COVID-19 virus, and that the Bureau of Prisons ("BOP") had not adequately treated his colitis and prostatitis conditions.  (Def. Mot. (Dkt. No. 224) at 1-2)

        On August 4, 2020, this Court denied Gomez's motion for compassionate release, finding that he had not shown that his medical conditions increased his risk of severe illness from

COVID-19, and that Gomez's release presented a danger to the community.  (Order (Dkt. No. 228) at 2-3)

On August 24, 2020, Gomez submitted a motion for reconsideration, which this Court denied on September 1, 2020.  (Def. Mot. (Dkt. No. 232); Order (Dkt. No. 233))

In his second motion for compassionate release, Gomez states that his "serious, pre-existing health conditions . . . make him seriously vulnerable to profound infection or death from the new mutated COVID-19 B-117 variant[]. . . ."  (Def. Mot. (Dkt. No. 240) at 5)  Gomez states that he is especially vulnerable to COVID-19 because he suffers from "Type-2 diabetes, Hypertension, and IBS [irritable bowel syndrome] colitis."  (Id. at 4-5) (citations omitted)

The Government opposes Gomez's motion.  While it acknowledges that Gomez "was diagnosed with Type 2 diabetes in August 2020," it argues that the motion should be denied because (1) Gomez has not exhausted his administrative remedies by making an application for a reduction in sentence to BOP; (2) Gomez received a first dose of the COVID-19 vaccine and has not shown that extraordinary and compelling circumstances warrant his release; and (3) the Section 3553(a) factors counsel against his release.  (Govt. Opp. (Dkt. No. 242) at 1-3, 2 n.1)

In a reply dated May 20, 2021, Gomez states that he "has been fully vaccinated," that he has also been diagnosed with "Anxiety Disorder [and] Obesity," which put him at greater risk of severe illness from COVID-19, and that "it would be futile for Gomez to exhaust his administrative remedies again."  (Def. Reply (Dkt. No. 243) at 1)  In a June 1, 2021 letter, Gomez advises that a urine sample he submitted on May 25, 2021 showed "sign[s] of kidney failure," and that "a recent study by researchers in Italy . . . [found] that people with obesity

2

produced only about half the amount of antibodies in response to the second dose of the Pfizer vaccine."¹  (June 1, 2021 Def. Ltr. (Dkt. No. 244) at 1-2)

On August 16, 2021, the Government submitted a letter advising that, according to Gomez's medical records, "Gomez is overweight but not obese, . . . has been diagnosed with hypertension and Type 2 diabetes," and there are no indications that Gomez is suffering from kidney failure.  (Aug. 16, 2021 Govt. Ltr. (Dkt. No. 248) (citing Ex. A, Gomez medical records as of July 22, 2021 (submitted under seal) ("Ex. A") at 38, 63, 100-02))  The Government also confirms that Gomez received both doses of the Moderna COVID-19 vaccine.  (Id. (citing Ex. A at 106))

On August 23, 2021, Gomez submitted a response to the Government's August 16, 2021 letter.  (Aug. 23, 2021 Def. Ltr. (Dkt. No. 250))  He argues that although his medical records say he is "overweight," his Body Mass Index ("BMI") falls within the range defined as "obese" by the Centers for Disease Control and Prevention ("CDC").  (Id. at 2)  Gomez also challenges the Government's argument that his medical records "do not appear[] to indicate any diagnos[is] of Kidney Disease."  He asserts that his creatinine levels and the presence of "protein and blood" in his urine are indicators that he suffers from kidney damage.  (Id. at 3-4) (citations omitted)  Finally, while he acknowledges that he is fully vaccinated, he argues that his medical conditions put him "at greater risk if he is infected with [the] Delta variant."  (Id. at 5) (citations omitted)

Under 18 U.S.C. § 3582(c)(1)(A), a court may,

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed

---

¹ Gomez did not submit medical records supporting these claims, nor does he provide a citation for the Italian study that he references.

3

> the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A). Pursuant to this statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." Id.

As an initial matter, Gomez has not submitted a request to the BOP for a reduction in sentence based on changed circumstances, and therefore he has not exhausted his administrative remedies. "[T]o be eligible for relief based on changed circumstances, Defendant must first seek relief from the BOP." United States v. Foozailov, 17 Cr. 262 (LGS), 2021 U.S. Dist. LEXIS 20774, at *2-3 (S.D.N.Y. Feb. 3, 2021) (citing United States v. Padilla, No. 18 CR. 454-6 (KPF), 2021 WL 242463, at *2 (S.D.N.Y. Jan. 25, 2021); United States v. Nwankwo, No. 12 CR 31(VM), 2020 WL 7335287, at *1 (S.D.N.Y. Dec. 14, 2020))). Gomez has not demonstrated that it would "futile" for him to exhaust his administrative remedies.

Gomez has likewise not shown that extraordinary and compelling circumstances warrant his release. The Government acknowledges that Gomez suffers from two medical conditions – Type 2 diabetes and hypertension – that increase his risk of severe illness from COVID-19. (See Govt. Opp. (Dkt. No. 242) at 2 n.1; Aug. 16, 2021 Govt. Ltr. (Dkt. No. 248) at 4; Ex. A at 38, 63; see also People with Certain Medical Conditions, CDC: COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021))

Obesity and chronic kidney disease also increase the risk of severe illness from COVID-19. See People with Certain Medical Conditions, CDC: COVID-19,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021)).  While the Government argues that Gomez is only overweight and not obese, his medical records show that he is 68 inches in height and weighs 200 pounds.  This height and weight correlates with a BMI of 30.4.  (Aug. 26, 2021 Def. Ltr. (Dkt. No. 250) at 2; see also id. at 11 (medical records showing that Gomez's BMI is 30.4))  The CDC defines obesity as a BMI between 30 and 39.  See People with Certain Medical Conditions, CDC: COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021).  Accordingly, Gomez meets the CDC's definition for obesity.

        As to kidney disease, Gomez asserts that his creatinine levels – which ranged from 1.04 to 1.24 between December 2020 and August 5, 2021 – indicate that his kidney function is impaired.  (Aug. 26, 2021 Def. Ltr. (Dkt. No. 250) at 3; see also id. at 13, 15, 17)  He also points to test results showing the presence of protein, blood, and leukocytes in his urine.[2] (Id. at 4; see also id. at 19, 21)  Gomez cites several cases in which courts have noted that elevated creatinine levels and the presence of protein in the urine are indicators of kidney disease, but those cases do not support a finding that Gomez suffers from kidney disease.  (See id. at 3-4 (citing United States v. Johnson, No. 98-CR-860(7) (ARR), 2021 WL 1207314 (E.D.N.Y. Mar. 31, 2021); McCurry v. Saul, Civil No. 2:20-cv-02004-PKH-MEF, 2021 U.S.

---

[2]  Gomez also cites urinalysis results showing "[g]rowth of mixed flora [that] was isolated, suggesting probable contamination," and contends that an "EGD" – an esophagogastroduodenoscopy – revealed "evidence of Chronic gastritis."  (Id. at 4, 23, 25)  Gomez does not explain what these test results mean or how they indicate that he suffers from kidney disease.  Gastritis relates to inflammation of the stomach, not the kidneys.  See Gastritis, MAYO CLINIC (Apr. 3, 2020), https://www.mayoclinic.org/diseases-conditions/gastritis/symptoms-causes/syc-20355807 ("Gastritis is a general term for a group of conditions with one thing in common:  inflammation of the lining of the stomach.")

Dist. LEXIS 18681 (W.D. Ark. Jan. 14, 2021); Padilla v. Bobb-Diallo, 9:17-cv-1150 (MAD/TWD), 2020 WL 3038135 (N.D.N.Y. Jan. 13, 2020), report and recommendation adopted, 9:17-cv-1150 (MAD/TWD), 2020 WL 1025159 (N.D.N.Y. Mar. 3, 2020); Paredes v. Comm'r of Soc. Sec., No. 16-CV-00810 (BCM), 2017 WL 2210865 (S.D.N.Y. May 19, 2017)))

Paredes and McCurry are Social Security disability benefits cases brought by plaintiffs suffering from kidney disease. In Paredes, the court noted that, "'[i]f your kidneys aren't functioning properly, an increased level of creatinine may accumulate in your blood.' . . . The normal range for creatinine in the blood may be 0.84 to 1.21 milligrams per deciliter . . . , although this can vary from lab to lab, between men and women, and by age. . . ." 2017 WL 2210865, at *4 n.7 (citing Creatinine test, MAYO CLINIC, http://www.mayoclinic.org/testsprocedures/creatinine-test/home/ovc-20179389 (last visited May 18, 2017)). Here, Gomez's creatinine levels are largely within this normal range. His highest creatinine level was 1.24 on August 5, 2021, only slightly above the normal range identified by the Paredes court.

In McCurry, the court stated that "Plaintiff's treating physician noted that his microalbumin was elevated, meaning his diabetes had caused kidney damage that was leaking protein into his urine in small amounts." 2021 U.S. Dist. LEXIS 18681, at *28. But unlike the plaintiff in McCurry, Gomez has not presented a physician's opinion that he is suffering from kidney damage.

Padilla is a Section 1983 action in which plaintiff brought claims against a nurse practitioner who treated him at a correctional facility. Padilla, 2020 WL 3038135, at *3. Plaintiff argued that the defendant "knew there was protein in [plaintiff's] urine[,] which is a clear sign of kidney failure," and that the defendant should have arranged for plaintiff's

6

immediate transfer to a hospital. Id. at *6. The court dismissed plaintiff's claim, finding that the nurse practitioner had initially "concluded [that] Plaintiff was in fair condition suffering primarily from hypertension," and sent plaintiff to the hospital six days later after his "condition failed to improve and [after learning] that he was complaining of chest pain." Id. at *7. Here, while protein has been detected in Gomez's urine, that finding does not necessarily show that he suffers from kidney disease. The presence of protein in urine can be caused by, among other things, dehydration, emotional stress, diabetes, and hypertension. See Protein in urine, MAYO CLINIC (Apr. 21, 2020), https://www.mayoclinic.org/symptoms/protein-in-urine/basics/causes/sym-20050656; Protein in Urine (Proteinuria) Causes, Symptoms, & Treatments, AM. KIDNEY FUND, https://www.kidneyfund.org/kidney-disease/kidney-problems/protein-in-urine.html (last updated Aug. 24, 2021). Gomez has been diagnosed with – and is receiving treatment for – diabetes and hypertension, which may explain the presence of protein in his urine.

    Finally, in Johnson, the court denied a compassionate release motion where the defendant argued that "newly asserted medical conditions – allergic rhinitis, also known as hay fever, and an elevated creatinine level in 2015 – place[ed] him at a particularly high risk of serious illness associated with COVID-19." 2021 WL 1207314, at * 3. The court found that "while elevated creatinine levels may indicate kidney impairment, [defendant] has not established that he has been diagnosed with any kidney disease or that his creatinine level has remained elevated since 2015. Therefore, I cannot conclude that he suffers from chronic kidney disease . . . [or that his] medical conditions place him at a particularly high risk of COVID-19

complications. . . ." Id.  Here, too, Gomez has not shown that he has been diagnosed with kidney disease or that his creatinine levels have been elevated for a significant period of time.[3]

Even if Gomez had been diagnosed with chronic kidney disease, however, he has received both doses of the Moderna COVID-19 vaccine, which provides "'significant protection against serious illness or death should he contract COVID-19.'"  United States v. Naut, 18 Cr. 219-3 (AT), 2021 WL 3115812, at *2 (S.D.N.Y. July 22, 2021) (quoting United States v. Diaz, 19-CR-65 (JMF), 2021 WL 2018217, at *1 (S.D.N.Y. May 20, 2021)).  Moreover, according to the BOP's website, FCI-Allenwood Medium currently has no active COVID-19 cases among inmates or staff.  See BOP: COVID-19, https://www.bop.gov/coronavirus/ (last visited Sept. 13, 2021).  Accordingly, even though Gomez suffers from certain medical conditions that increase his risk of severe illness, the fact that he is fully vaccinated makes the risk that he "'will contract COVID-19 and become seriously ill . . . extremely small.'"  United States v. Morel, 10 Cr. 798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (quoting United States v. Pabon, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021)).  Gomez thus has not shown that extraordinary and compelling circumstances warrant his release.

Finally, analysis of the Section 3553(a) factors counsels against Gomez's release.  While Gomez has served an additional year of his 155-month sentence, none of the facts bearing on the Section 3553(a) analysis have materially changed since this Court's August 4, 2020 order:

> The fact that Gomez was convicted of conspiring to distribute and possess with intent to distribute five kilograms of cocaine demonstrates that he presents a danger to the community. 18 U.S.C. § 3142(e).  Moreover, Gomez was convicted of multiple crimes before the instant offense, and was involved in large-scale distribution of heroin prior to his arrest in this case.  (Sentencing Tr. (Dkt. No. 212) at 12-14)  At sentencing, this Court concluded that Gomez presented a high

---

[3] Gomez also cites Thomson v. Drummond, Civil Action No. 16-cv-08847-SDW-LDW, 2017 U.S. Dist. LEXIS 192319 (D.N.J. Jan. 11, 2017), but that case does not contain any discussion of kidney disease, COVID-19, or motions for compassionate release.  See id. at *1-3.

8

> risk of recidivism, and sentenced him to a term of imprisonment within the applicable Guidelines range of 140 to 175 months' imprisonment. (Id. at 14-15) Gomez has served less than half of his sentence, and has more than six years' imprisonment remaining. . . . [E]ven if Gomez had demonstrated that he suffered from pre-existing conditions that make him more susceptible to the COVID-19 virus – given the favorable conditions at FCI-Allenwood – this risk is outweighed by compelling evidence that Gomez's release at this time would compromise the safety of the community.

(Order (Dkt. No. 228) at 2 (citing United States v. Fernandez, No. 12-CR-844-9 (AJN), 2020 WL 3034799, at *3 (S.D.N.Y. June 5, 2020)))

In sum, analysis of the Section 3553(a) factors continues to weigh against granting relief.

For these reasons, Gomez's application for compassionate release is denied.[4] The Clerk of Court is directed to terminate the motions (15 Cr. 348, Dkt. Nos. 240, 249; 17 Civ. 6190, Dkt. No. 51), and to mail a copy of this order to the Defendant.

Dated: New York, New York
       September 13, 2021

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[4] On August 16, 2021, Gomez submitted a motion for an update on the status of his compassionate release motion. (Dkt. No. 249) That motion is denied as moot.