UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| - against - | **ORDER** |
| JORGE GOMEZ, | 15 Cr. 348 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

On January 10, 2023, Defendant Jorge Gomez filed a third pro se motion for
compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Dkt. No. 271)  On December 11,
2023, Gomez moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), arguing that he is
eligible for a sentence reduction under Amendment 821 to the Sentencing Guidelines.  (Dkt. No.
280)  While the Government opposes Gomez's compassionate release motion (Govt. CR Opp.
(Dkt. No. 275)), it does not oppose Gomez's motion for a sentence reduction premised on
Amendment 821.  (Govt. 821 Resp. (Dkt. No. 286))

For the reasons stated below, Defendant's motions will be denied.

**BACKGROUND**

On June 10, 2015, the Government obtained an indictment charging Jorge Gomez
("Gomez"), Sandy Gomez, and Carolina Ramon-Baez with conspiracy to distribute and to
possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§
846 and 841(b)(1)(A).  (Indictment (Dkt. No. 1))

On October 5, 2016, Gomez entered into a plea agreement with the Government
in which he agreed to plead guilty to the Section 841(b)(1)(A) cocaine conspiracy charge.  (Plea
Agmt. (Dkt. No. 195-2))  In the plea agreement, Gomez and the Government stipulated that his

offense involved "at least 5 kilograms of cocaine but less than 15 kilograms of cocaine." (Id. at 2)

On October 11, 2016, Gomez pled guilty before Magistrate Judge Gabriel Gorenstein. (Oct. 11, 2016 Plea Tr. (Dkt. No. 106)) During his plea allocution, Gomez stated that he had "agreed with others to get a vehicle SUV that had a hidden compartment for the purpose of having another person transport cocaine in [the] hidden compartment from the south to the New York/New Jersey area where it [would] have been distributed." (Id. at 11) Gomez further stated that he understood that "five kilograms" of cocaine would be transported in the hidden compartment of the SUV. (Id. at 11-12)

On April 14, 2017, this Court sentenced Gomez to 155 months' imprisonment and five years' supervised release. (Apr. 14, 2017 Sent. Tr. (Dkt. No. 167) at 17)

Since his sentencing in April 2017, Gomez has repeatedly moved for various forms of post-conviction relief.

On August 15, 2017, Gomez filed a petition to set aside his conviction under 28 U.S.C. § 2255 (Dkt. No. 180) This Court denied Gomez's Section 2255 petition on December 23, 2019. (Dkt. No. 216) This Court also denied Gomez's motion for reconsideration on August 8, 2020. (Dkt. No. 229)

On July 21, 2020, Gomez filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. No. 224) That motion was premised on the risks to Gomez's health presented by COVID-19, given that he suffers from "salmonella entercolitis . . . proctitis, cryptitis anal, and prostatitis." (Id. at 1-2) This Court denied Gomez's motion on August 4, 2020 (Dkt. No. 228), and on September 1, 2020, this Court denied his motion for reconsideration. (Dkt. No. 233)

On May 3, 2021, Gomez filed his second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Dkt. No. 240)  In his second motion, Gomez states that his "serious, pre-existing health conditions . . . make him seriously vulnerable to profound infection or death from the new mutated COVID-19 B-117 variant[]. . . ."  (Id. at 5)  Gomez states that he is especially vulnerable to COVID-19 because he suffers from "Type-2 diabetes, Hypertension, and IBS [irritable bowel syndrome] colitis."  (Id. at 4-5) (citations omitted)  This Court denied Gomez's motion on September 13, 2021 (Dkt. No. 252), and denied his motion for reconsideration on October 1, 2021.  (Dkt. No. 261)

Gomez filed the instant motion for compassionate release – his third – on January 10, 2023.  (Dkt. No. 271)  The Government filed an opposition brief on March 2, 2023.  (Dkt. No. 275)

On December 11, 2023, Gomez moved for a sentence reduction under 18 U.S.C. 3583(c)(2) and Amendment 821 to the Sentencing Guidelines.  (Dkt. No. 280)  In a January 26, 2024 letter, the Government states that it does not oppose Gomez's sentence reduction motion.  (Dkt. No. 286)

## DISCUSSION

### I. COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)

Gomez argues that he is entitled to compassionate release because "extraordinary and compelling reasons" warrant his release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Def. CR Br. (Dkt. No. 271) at 1)  The Government contends that Defendant has not made the requisite showing of "extraordinary and compelling reasons" and that the factors set forth in 18 U.S.C. § 3553(a) weigh against release.  (Govt. CR Opp. (Dkt. No. 275) at 1)

**A.    <u>Applicable Law</u>**

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A).

A defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." <u>Id.</u>

Where a defendant has exhausted his administrative remedies, a court considering an application for compassionate release must (1) determine whether there are "extraordinary and compelling reasons [that] warrant . . . a [sentence] reduction," and (2) weigh the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i). "[T]he district court has broad discretion in evaluating a defendant's motion for compassionate release," <u>United States v. Vargas</u>, 502 F. Supp. 3d. 820, 824 (S.D.N.Y. 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]. . . ." <u>United States v. Brooker</u>, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" <u>Id.</u> (bracket in original) (footnote omitted) (quoting 28 U.S.C. § 994(t)).

**B.**    <u>Analysis</u>

The Government concedes that Gomez has exhausted his administrative remedies. (<u>See</u> Govt. CR Opp. (Dkt. No. 275) at 4 n.1)  Accordingly, the disputed issues are (1) whether the Defendant has made the necessary showing of "extraordinary and compelling reasons"; and (2) whether the Section 3553(a) factors warrant release.

**1.**    <u>Extraordinary and Compelling Reasons</u>

In arguing that "extraordinary and compelling reasons" justify compassionate release, Gomez argues that he should benefit from the First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018), and the Supreme Court's decision in <u>Concepcion v. United States</u>, 597 U.S. 481 (2022).  (Def. CR Br. (Dkt. No. 271) at 5-9)

The section of the First Step Act cited by Gomez (<u>see</u> <u>id.</u> at 6) authorizes district courts to "impose a reduced sentence" on certain defendants convicted of offenses involving crack cocaine.  Pub. L. 115–391, § 404(b), 132 Stat. 5222.  The First Step Act provides that, upon application of the defendant, a district court "may impose a reduced sentence" for qualified movants, and in doing so, may proceed "as if sections 2 and 3 of the Fair Sentencing Act of 2010" – which increased the amount of crack cocaine necessary to trigger the mandatory minimum penalties in 21 U.S.C. § 841(b) – "were in effect at the time the covered [crack cocaine] offense was committed."  <u>Id.</u>

In <u>Concepcion v. United States</u>, the defendant moved for a sentence reduction under that portion of the First Step Act addressing the change in the crack cocaine drug quantity provisions.  <u>Concepcion</u>, 597 U.S. at 488-89.  In his motion, Concepcion also argued that the district court should consider the fact that he no longer qualified as a career offender under the Sentencing Guidelines because, <u>inter</u> <u>alia</u>, one of his underlying convictions had been vacated. Absent the career offender enhancement, his Guidelines range would be much-reduced.  <u>Id.</u>  The

district court denied Concepcion's motion, concluding that his sentence would be the same even with application of the Fair Sentencing Act, and that it was not appropriate for the court to consider – under the First Step Act – Concepcion's argument that he would no longer qualify as a career offender.  Id. at 489.  The First Circuit affirmed.  See United States v. Concepcion, 991 F.3d 279 (1st Cir. 2021).  The Supreme Court reversed, however, holding that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," including post-sentence developments affecting a defendant's career offender status.  Concepcion, 597 U.S. at 500.

The First Step Act and Concepcion have no application here, however.  As Gomez acknowledges, his conviction involved a conspiracy to distribute powder cocaine, and not a conspiracy to distribute crack cocaine.  (Def. CR Br. (Dkt. No. 271) at 6 ("Defendant Gomez does not have a cra[c]k cocaine conspiracy. . . .")).  Accordingly, changes in the law regarding crack cocaine offenses are irrelevant.  See, e.g., United States v. Reed, 7 F.4th 105, 111 (2d Cir. 2021) ("[H]ad [the defendant] been convicted of a conspiracy under 21 U.S.C. § 846 involving just powder cocaine, that conspiracy offense would not qualify as a 'covered offense' [under the First Step Act] and would be ineligible for a sentence reduction under the First Step Act.").

Similarly, Gomez was not sentenced as a career offender.  (See April 14, 2017 Sent. Tr. (Dkt. No. 167) at 6)  And Gomez cites no "intervening changes of law or fact" that this Court should consider pursuant to Concepcion.  597 U.S. at 500.

In arguing that "extraordinary and compelling reasons" justify his compassionate release, Gomez also argues that this Court should consider the fact that the "actual amount of cocaine seized [by law enforcement agents in his case] was 4.98 kilograms," which falls just

below the five-kilogram threshold for the Section 841(b)(1)(A) cocaine conspiracy charge to which Gomez pled guilty. (Def. CR Br. (Dkt. No. 271) at 7)

Gomez's drug quantity argument is not persuasive for multiple reasons. As an initial matter, Gomez stipulated in his plea agreement that his conspiracy offense involved five kilograms of cocaine. (Plea Agmt. (Dkt. No. 195-2) at 2) And during his guilty plea allocution he admitted that his offense involved an agreement to distribute at least "five kilograms" of cocaine. (Oct. 11, 2016 Plea Tr. (Dkt. No. 106) at 11-12)

This Court also addressed the quantity issue at sentencing:

I want to go into, in some detail, the quantity, for a couple of reasons. First of all, at our last conference, there was an issue raised about quantity. It hasn't been pursued this morning, but it's important to understand the quantity that was being discussed here because it goes to where in the applicable range Mr. Gomez should be sentenced. As I mentioned, the charges stem from a contact that Mr. Jorge Gomez made to someone who, as it ultimately turned out, was an informant for the DEA in which he asked whether that individual knew where a car could be obtained that contained a secret compartment, and the informant reported that to the DEA, and the DEA provided a vehicle that contained a trap.

The reason why Jorge Gomez wanted the vehicle with a trap is that his brother had told him that he had a source in New Orleans who was prepared to provide very large quantities of cocaine to him, and in fact, Mr. Jorge Gomez and his girlfriend, [Carolina] Ramon-Baez, were involved in an earlier trip to New Orleans, earlier in 2014, where they went down to New Orleans with the idea of picking up this cocaine from Sandy Gomez's acquaintance. They arrived in New Orleans hoping to obtain as much as 50 to 100 kilograms of cocaine to bring back to the New York-New Jersey area.

When they arrived in New Orleans, the source refused to provide the cocaine because Sandy Gomez did not have a vehicle with a hidden compartment, so the first trip to New Orleans was unsuccessful, and that led Sandy Gomez to ask his brother to find out whether there was somebody who could provide a vehicle with a trap that could be utilized to pick up the cocaine in New Orleans. It was in that context that Jorge Gomez made inquiries which ultimately led to this DEA confidential informant that I mentioned. And as I said, the DEA provided the vehicle with the trap to Jorge Gomez, who in turn provided it to his brother Sandy.

In December 2014, Sandy Gomez and Jorge Gomez's girlfriend, Ramon-Baez, set off for New Orleans to pick up the cocaine, and they were tailed most of the way

down by the DEA because there was some sort of GPS monitor attached to the vehicle.

When they got down to New Orleans, the DEA somehow lost the truck, but according to Ramon-Baez, who testified at the trial of Sandy Gomez, during the time that they were in New Orleans, Sandy Gomez left to obtain the cocaine, and when she and Sandy Gomez drove back, they were stopped in Louisiana by a Louisiana state trooper, and a search of the vehicle at that time led to the recovery of slightly less than five kilograms of cocaine hidden in the secret compartment in the truck that had been provided by the DEA informant.

The point is that the plea agreement here under which Mr. [Jorge] Gomez was only held responsible for five kilograms of cocaine was a highly favorable plea agreement to Mr. Jorge Gomez. The evidence that was admitted at the trial of his brother, Sandy Gomez, demonstrates that Jorge Gomez actually agreed to participate in a conspiracy that involved a much larger amount of cocaine. When the individual who was the DEA informant first started speaking with Jorge Gomez about providing the vehicle, there was a discussion about how big the compartment should be in which the cocaine would be stored, and in conversations that were intercepted by the DEA, admittedly in code, it's clear that Mr. Jorge Gomez was looking for a truck with a compartment that could hold as much as 25 to 30 kilograms of cocaine.

In later conversations, and these are at trial transcript 110 through 119 and Government Exhibit 203T in particular, Mr. Jorge Gomez talks with the informant about needing a vehicle that can hold as much as 50 kilograms. So the plea agreement in which the government stipulated to an amount of 5 to 15 kilograms was extremely favorable to Mr. Jorge Gomez, and I am going to follow that agreement, for purposes of where in the range Mr. Jorge Gomez should be sentenced, I am going to consider the evidence regarding the amount that I've talked about that is reflected in the recorded conversations as well as in the trial record.

(April 14, 2017 Sent. Tr. (Dkt. No. 167) at 9-12)

Gomez raised the same drug quantity issue in his Section 2255 petition alleging

ineffective assistance of counsel. (See Order (Dkt. No. 216)) In rejecting that argument, this

Court noted that

the Indictment charged Gomez with conspiracy, and thus the amount of drugs actually seized was not dispositive. The fact that the lab report showed 4.98 kilograms rather than five kilograms of cocaine was not material, because there was ample evidence – includ[ing] tape-recorded evidence – that Gomez had discussed transporting from New Orleans to the New York area much larger quantities of cocaine – 25 to 30 kilograms.

(Id. at 15)

In sum, the fact that "the actual amount of cocaine seized was 4.98 kilograms" (Def. CR Br. (Dkt. No. 271) at 7) does not constitute an "extraordinary and compelling reason" warranting compassionate release.

Finally, Gomez argues that his age, weight, and medical conditions – type-2 diabetes, hypertension, depression, anxiety, and irritable bowel syndrome – put him at risk for more serious consequences if he contracts COVID-19. (Id. at 10-11) However, Gomez made this same argument in his second motion for compassionate release. In that motion, Gomez stated that he is especially vulnerable to COVID-19 because he suffers from "Type-2 diabetes, Hypertension, and IBS [irritable bowel syndrome] colitis" (Def. Second CR Mot. (Dkt. No. 240) at 4-5) (citations omitted), as well as "[an] Anxiety Disorder [and] Obesity[.]" (Def. Second CR Mot. Reply (Dkt. No. 243) at 1)

In a September 13, 2021 order, this Court considered each of the medical conditions cited by Gomez and concluded that they do not constitute "extraordinary and compelling reasons" warranting compassionate release. (Sept. 13, 2021 Order (Dkt. No. 252) at 4-8) Gomez cites no change in his medical condition that would justify a different outcome.

Moreover, as this Court noted in denying Gomez's second compassionate release motion, Gomez "received both doses of the Moderna COVID-19 vaccine." (Id. at 8) Accordingly, even though Gomez may suffer from medical conditions that increase his risk of severe illness from the COVID-19 virus, the fact that he is fully vaccinated makes the risk that he "'will contract COVID-19 and become seriously ill . . . extremely small.'" United States v. Morel, 10 Cr. 798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (quoting United States v. Pabon, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021)). And

according to the BOP's website, Federal Correctional Institution Fairton, where Gomez is now incarcerated, currently has no active COVID-19 cases among its inmates.[1]

In sum, none of the factors cited by Gomez – whether viewed alone or in combination – constitute "extraordinary and compelling reasons" warranting compassionate release or a sentence reduction.

### 2.    Section 3553(a) Factors

Even if Gomez had proffered "extraordinary and compelling reasons" justifying his release, his application would still be denied, because the record demonstrates that his sentence was consistent with the statutory objectives of sentencing.

18 U.S.C. § 3553(a) provides:

(a) Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(1)-(2).

---

[1] See BOP Inmate COVID-19 data (last visited November 15, 2024), available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp.

This Court addressed the Section 3553(a) factors in connection with Gomez's first motion for compassionate release, and made the following observations:

> The fact that Gomez was convicted of conspiring to distribute and possess with intent to distribute five kilograms of cocaine demonstrates that he presents a danger to the community. 18 U.S.C. § 3142(e). Moreover, Gomez was convicted of multiple crimes before the instant offense, and was involved in large-scale distribution of heroin prior to his arrest in this case. (Sentencing Tr. (Dkt. No. 212) at 12-14) At sentencing, this Court concluded that Gomez presented a high risk of recidivism, and sentenced him to a term of imprisonment within the applicable Guidelines range of 140 to 175 months' imprisonment. (Id. at 14-15) Gomez has served less than half of his sentence, and has more than six years' imprisonment remaining. . . . [E]ven if Gomez had demonstrated that he suffered from pre-existing conditions that make him more susceptible to the COVID-19 virus – given the favorable conditions at FCI-Allenwood – this risk is outweighed by compelling evidence that Gomez's release at this time would compromise the safety of the community.

(Aug. 4, 2020 Order (Dkt. No. 228) at 2 (citing United States v. Fernandez, No. 12-CR-844-9 (AJN), 2020 WL 3034799, at *3 (S.D.N.Y. June 5, 2020))) This Court cited these same considerations in denying Gomez's second motion for compassionate release on September 13, 2021. (Sept. 13, 2021 Order (Dkt. No. 252) at 8-9)

While Gomez has now served more time on his sentence, the other factors cited by the Court remain unchanged. Accordingly, analysis of the Section 3553(a) factors continues to weigh against granting relief.

The Court concludes that Gomez is not entitled to compassionate release.

## II.    MOTION FOR A SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(2)

On December 11, 2023, Gomez moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), arguing that he is eligible for a sentence reduction under Amendment 821 of the Sentencing Guidelines. (Dkt. No. 280)

On January 23, 2024, the Probation Department submitted a Supplemental Presentence Report ("PSR") stating that Gomez is eligible for relief under Amendment 821. (Supp. PSR (Dkt. No. 285) at 1-3)  In a January 26, 2024 submission, the Government states that it agrees that Gomez is eligible for a sentence reduction under Amendment 821, and that it "does not object to the Court granting the defendant's motion, and reducing the defendant's sentence to a sentence within the new Guidelines range of 121 to 151 months' imprisonment."  (Jan. 26, 2024 Ltr. (Dkt. No. 286) at 1-3)

### A.    **Applicable Law**

18 U.S.C. § 3582(c)(2) provides that,

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id.; see also U.S.S.G. §1B1.10 ("In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual . . . , the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. §3582(c)(2).")

Section 3582(c)(2) "establishes a two-step inquiry.  A court must first determine that a reduction is consistent with Section 1B1.10 [of the Sentencing Guidelines] before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)."  Dillon v. United States, 560 U.S. 817, 826 (2010).  Under U.S.S.G. § 1B1.10(a)(2)(B), "[a] reduction in the defendant's term of imprisonment . . . is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment . . . does not have the effect of

lowering the defendant's applicable guideline range." See also U.S.S.G. §1B1.10 n.1(A)

("Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment

. . . that lowers the applicable guideline range (i.e., the guideline range that corresponds to the

offense level and criminal history category determined pursuant to §1B1.1(a), which is

determined before consideration of any departure provision in the Guidelines Manual or any

variance).").  Where a court determines that the Section 3553(a) factors warrant a sentence

reduction, U.S.S.G. § 1B1.10(b) provides that "the court shall not reduce the defendant's term of

imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than

the minimum of the amended guideline range determined under subdivision (1) of this

subsection." U.S.S.G. § 1B1.10(b)(2)(A); see Dillon, 560 U.S. at 826 ("A court's power under §

3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the

Guidelines but to make the amendment retroactive.  The court is also constrained by the

Commission's statements dictating 'by what amount' the sentence of a prisoner serving a term of

imprisonment affected by the amendment 'may be reduced.'" (quoting 18 U.S.C. § 994(u))

Amendment 821 to the Sentencing Guidelines – which became effective on

November 1, 2023, and which applies retroactively[2] – changes the calculation of criminal history

points for defendants who commit the offense of conviction while "under any criminal justice

sentence," whether parole, probation, supervised release, or otherwise.  Prior to the November 1,

2023 amendment, U.S.S.G. § 4A1.1(d) provided that courts should "[a]dd 2 [criminal history]

points if the defendant committed the instant offense while under any criminal justice sentence,

including probation, parole, supervised release, imprisonment, work release, or escape status."

---

[2] See Amendment to the Sentencing Guidelines, United States Sentencing Commission (Aug.
31, 2024), available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-
friendly-amendments/202308_RF-retro.pdf.

U.S.S.G. §4A1.1(d) (2021 ed.). As a result of the November 1, 2023 amendment, Section

4A1.1(e) now provides that courts should "[a]dd 1 [criminal history] point if the defendant (1)

receives 7 or more [criminal history] points under subsections (a) through (d) [of Section 4A1.1],

and (2) committed the instant offense while under any criminal justice sentence, including

probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G.

§4A1.1(e) (2023 ed.).

    B.    <u>**Analysis**</u>

        Gomez contends that application of Amendment 821 to his offense of conviction

results in a lower Guidelines range, rendering him eligible for a sentence reduction. (Def.

Amend. 821 Br. (Dkt. No. 280) at 3-4) The Probation Department and the Government agree

that Gomez is eligible for a sentence reduction under Amendment 821. (Supp. PSR (Dkt. No.

285) at 1-3; Jan. 26, 2024 Govt. Ltr. (Dkt. No. 286) at 1-3)

        At Gomez's April 14, 2017 sentencing, this Court found that he had 10 criminal

history points, which correlates with Criminal History Category V. (Apr. 14, 2017 Sent. Tr.

(Dkt. No. 143) at 5-6) Eight of Gomez's criminal history points relate to his prior convictions.

(PSR (Dkt. No. 285) ¶¶ 43, 45-47)

        The two remaining criminal history points were imposed under the version of

U.S.S.G. § 4A1.1 then in effect, which required that two criminal history points be added where

a defendant committed the offense of conviction while "under any criminal justice sentence."

U.S.S.G. §4A1.1(d) (2021 ed.). At the time Gomez committed the instant drug offense, he was

serving a term of community supervision in connection with a 1998 conviction for sexual assault

in the second degree. (PSR (Dkt. No. 285) ¶¶ 43, 48)

        Under the revised Section 4A1.1(e), Gomez would receive one criminal history

point for committing his drug offense while under a criminal justice sentence, because he has

14

seven or more criminal history points based on his prior convictions. See U.S.S.G. §4A1.1(e)

(2023 ed.). With nine criminal history points, Gomez would fall within Criminal History

Category IV, rather than Criminal History Category V. Total offense level 29 at Criminal

History Category IV results in a Guidelines range of 121 to 151 months' imprisonment, rather

than the Guidelines range of 140 to 175 months' imprisonment calculated at the time of Gomez's

sentencing. (See Supp. PSR (Dkt. No. 285) at 3) Because application of the revised Section

4A1.1(e) "lowers the applicable guideline range" for Gomez's offense of conviction, he is

eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). U.S.S.G. §1B1.10 n.1(A).

   As noted above, the Government does not object to this Court reducing Gomez's

sentence to a term within the new Guidelines range of 121 to 151 months' imprisonment. (Jan.

26, 2024 Govt. Ltr. (Dkt. No. 286) at 1-3) While the Government does not object to a sentence

reduction, it does not conduct any analysis of the Section 3553(a) factors or otherwise explain

why a sentence reduction would be appropriate on the facts of this case.

   As this Court has found on several occasions, the Section 3553(a) factors weigh

against granting Gomez a sentence reduction. (See, e.g., Aug. 4, 2020 Order (Dkt. No. 228) at 3;

Sept. 13, 2021 Order (Dkt. No. 252) at 8-9) As this Court noted at Gomez's sentencing, Gomez

was convicted of multiple crimes before the instant offense, and was involved in large-scale

distribution of heroin prior to the large-scale cocaine conspiracy that led to his arrest in this case.

(Apr. 14, 2017 Sent. Tr. (Dkt. No. 167) at 12-14) Indeed, in the two years that preceded the

events leading to the offense of conviction, Gomez sold between 35 and 50 kilograms of heroin,

operated a stash house where the heroin was packaged, managed others who packaged the

heroin, and possessed a firearm. (Govt. Mar. 2, 2023 Ltr. (Dkt. No. 275) at 1) In connection

with the instant offense, the Defendant conspired to obtain as much as 25 to 30 kilograms of

cocaine.  (Id. at 2)  As a longtime, large-scale drug trafficker, Gomez presents a serious risk of danger to the community.

Gomez also has a serious criminal record, which includes convictions for sexual assault and possession of cocaine and heroin with intent to distribute.  (PSR (Dkt. No. 285) ¶¶ 43, 46)  At sentencing, this Court concluded that Gomez presents a high risk of recidivism. (Apr. 14, 2017 Sent. Tr. (Dkt. No. 167) at 14-15)

Moreover – as this Court previously noted – the "plea agreement here under which Mr. Gomez was only held responsible for five kilograms of cocaine was a highly favorable plea agreement," because "[t]he evidence that was admitted at the trial of his brother, Sandy Gomez, demonstrates that Jorge Gomez actually agreed to participate in a conspiracy that involved a much larger amount of cocaine," including "as much as 25 to 30 kilograms of cocaine."  (Id. at 11-13)

Finally, Gomez's adjustment to incarceration has been mixed.  While he obtained his GED and completed a number of classes, he has had a number of disciplinary infractions, including for fighting, assault, and "possessing drugs/alcohol."  (Supp. PSR (Dkt. No. 285) at 3)

The Court concludes that the Section 3553(a) factors weighs against granting the Defendant a sentence reduction.

## CONCLUSION

For the reasons stated above, Defendant's motions for compassionate release

(Dkt. No. 271) and a sentence reduction (Dkt. No. 280) are denied.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 271, 280, 290).

Dated: New York, New York
          November 15, 2024

                              SO ORDERED.

                              Paul G. Gardephe
                              United States District Judge